**THOMAS K. COAN**, OSB #891732
tom@tomcoan.com
Attorney at Law
1001 SW Fifth Ave., Suite 1400
Portland, OR  97204
(503) 221-8736

Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**PETER SANTILLI,**<br><br>Defendant. | Case No. 3:16-cr-00051-BR<br><br>DEFENDANTS' MEMORANDUM REGARDING APPLICATION OF *STRICTISSIMI JURIS* AND REQUEST TO RECONSIDER ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS |

I.     **The doctrine of *strictissimi juris* applies in cases such as this where group association and First Amendment rights are at issue.**

*Strictissimi juris* is the procedural doctrine that supports the substantive prohibition against a defendant being found guilty by association. Steven R. Morrison, *Strictissimi Juris*, 67 Ala. L. Rev. 247, 249–50, 253 (2015).  It requires the separate consideration of each individual defendant in a group and the judgment of that defendant's actions and intent independently.  The doctrine specifically applies to situations where an individual is engaged in a substantial amount of First Amendment activity such that discerning a

**Page 1 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

criminal conspiracy in that activity is difficult.  *See United States v. Stone*, 848 F. Supp. 2d 719, 723 (E.D. Mich. 2012) (It "comes into play for crimes that obviously implicate the First Amendment.").  It is intended to ensure that a verdict rests solely on the conduct and *mens rea* of the individual. Applied to protester situations, it protects the First Amendment right to speak, assemble, and associate when a defendant is a member of a group that engages in First Amendment conduct but may also engage in crime.  The Seventh Circuit applied *strictissimi juris* to *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), the Chicago Seven case arising out of a protest at the 1968 Democratic National Convention, The court noted that *strictissimi juris* applies "when the group activity out of which the alleged offense develops can be described as a bifarious undertaking, involving both legal and illegal purposes and conduct, and is within the shadow of the first amendment." *Id.* at 392.

### A. Supreme Court application of the doctrine

"*Strictissimi juris*" means "of the strictest right."  *United States v. Cerilli*, 603 F.2d 415, 421 (3d Cir. 1979).  Although originating in 1800s surety law, the Supreme Court first applied the doctrine in criminal cases in 1961. In *Noto v. United States*, 367 U.S. 290 (1961), the defendant had been charged and convicted based on the membership clause of the anti-Communist Smith Act.  The defendant was a member of a group that advocated overthrowing the federal government.  Much of the government's evidence came from a witness reading excerpts of communist materials and testimony about the defendant's group planning to gets supporter elected to leadership roles in the United Auto Workers.  The Supreme Court announced the modern *strictissimi juris* rule, holding that this type of crime

Page 2 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS

> must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share.

*Noto*, 367 U.S. at 299–300; *see also Hellman v. United States*, 298 F.2d 810, 812 (9th Cir. 1961) (discussed *infra*).

The same day, the Supreme Court decided *Scales v. United States*, 367 U.S. 203 (1961), where it defined the limits on First-Amendment protected group membership and activity, although without discussing the doctrine expressly. Membership could be criminal when the group advocated for violent overthrow *and* the individual defendant knows of that purpose and specifically intends to further it. While the *Scales* opinion does not specifically mention *strictissimi juris*, it does highlight the need to focus on the individual.

### B. Ninth Circuit application of the doctrine

In *Hellman v. United States*, 298 F.2d 810, 811 (9th Cir. 1961), the Ninth Circuit waited until the *Scales* and *Noto* opinions were issued before reviewing the case of a Communist Party member who was convicted under the Smith Act's membership clause. The court, having noted the recent application of *strictissimi juris* by the Supreme Court, focused on whether there was sufficient evidence that the defendant had a "specific intent to bring about violent overthrow of the government as speedily as circumstances would permit." *Id.* at 812. If that specific intent was not proved, "the conviction cannot stand however strong the proof may be that he was an active and knowledgeable member of an organization which advocated the violent overthrow of the Government." *Id.*

Page 3 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS

The court reasoned that because the Communist organization had both legal and illegal goals, a member might not intend the illegal goals. Instead, "an active member with knowledge of both the legal and illegal aims might personally intend to effectuate only the Party's legal objectives . . . ." *Id*. Thus, the fact of active membership and knowledge of the organization's illegal goals do not allow an inference that the member had illegal intent: "Such an inference is not a permissible one especially where, as here, the result of a mistaken finding would be to impair legitimate political expression or association." *Id.*

The Ninth Circuit articulated a test of the sufficiency of the evidence: "If Hellman's activity as a knowledgeable member of the Party was of a kind which is explainable on no other basis than that he personally intended to bring about the overthrow of the Government as speedily as circumstances would permit, personal illegal intent could properly be inferred." *Hellman*, 298 F.2d at 813. The court listed examples of activity that would meet this test: The "collection of weapons and ammunition in substantial quantities, or the conducting of field surveys to ascertain ways and means of sabotag[e] . . . ." *Id.* Without such personal advocacy on Hellman's part, the only other way that his illegal intent could be proved was through evidence he urged and encouraged contemporary legal or illegal action that could only have been motivated by an intent to accomplish violent overthrow of the Government. *Id.* at 813–14.

The court acknowledged that the government proved he was an "exceedingly active" member, organizer, recruiter, and promoter of the group.[1] However, although Hellman had discussed force and violence, he did so in his role as a teacher of his party's beliefs, not in

---

[1] Hellman "served as an organizer for the states of Montana and Idaho. He regularly

**Page 4 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

his personal advocacy. *Id.* at 814. Hellman urged Party members "to immediately undertake action." *Id.* Among other things, he encouraged students to take leadership positions and taught that they must advance the conditions necessary "to produce the crisis which the Communists need to succeed."[2] *Id.* He asked students to participate in elections to expose that change could not be achieved through elections. *Hellman*, 298 F.2d at 814. He proposed that the State Board organize an educational program which would stress 'the development of mass agitation and propaganda of all types.' He prepared a plan to accomplish the infiltration of the Farmer's Union in an attempt to dominate it." *Id.*

Even taken together, the Ninth Circuit did not feel that these calls to action supported a finding that Hellman had the requisite intent. Without his personally advocating violent overthrow of the Government, all of his actions were only equivocal. Applying its test, the court found that "[c]onsidering these facts alone, or in conjunction with his knowledge of the Party's illegal advocacy, the activity portrayed is explainable on the basis that he intended to bring about the Party's ultimate goals through peaceable means." *Id.* Accordingly, the court reversed Hellman's conviction.

////

////

## II.    The *strictissimi juris* doctrine at trial

---

[2] The Ninth Circuit found this call to action to be "[t]he most damaging action attributed to Hellman . . . ." *Id.* at 814. However, it appeared that Hellman was using one of the Communist Party "classics" and was doing no more than outlining the Party program. *Id.*

**Page 5 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

While the doctrine is an overarching rule to be considered throughout pretrial motions and trial, it particularly applies to evidentiary rulings, Rule 29 motions, and jury instructions.

### C.  Evidentiary rulings

*Relevance.*  In addition to the standards set out in Federal Rules of Evidence 401 and 402, the court should evaluate the relevance of offered evidence with a mind toward the doctrine.  This entails being skeptical of how relevant evidence is to any defendant not directly linked to it and giving an appropriate limiting instruction. It further entails protecting the First Amendment rights of defendants by excluding or limiting the evidence even if it may carry some relevance.  When making a Rule 403 evaluation of whether relevant evidence is unduly prejudicial, confusing, or misleading, *strictissimi juris* works hand-in-hand with Rule 403 because both protect the right to not be guilty by association.  To protect the right to be judged only on one's own actions and intent, the doctrine "was meant to address the unreliability of circumstantial evidence, the misuse of attenuated inference . . . [and] impose a preference for direct evidence, circumstantial evidence supported by direct evidence, and ambiguous First Amendment-protected evidence supported by direct or circumstantial evidence . . . ."  Morrison, *Strictissimi Juris* at 252.

*Co-conspirator hearsay.*  The court should consider and rule on the admissibility of co-conspirator hearsay under Rule 801(d)(2)(E) as soon as possible, since the government is likely to try and show the speech of one defendant is probative as to the intent of others.  If jurors hear co-conspirator evidence improperly, they are likely to impute that speaker's beliefs onto other defendants.  This is exactly the guilt-by-association concern that *strictissimi juris* is designed to prevent.  In *United States v. Spock*, 416 F.2d 165, 173 (1st

**Page 6 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

Cir. 1969), the court criticized the use of statements by third parties alleged to be co-conspirators, noting that the trial court had "fail[ed] to recognize" that "[t]he metastatic rules of ordinary conspiracy are at direct variance with the principle of *strictissimi juris*." *Id.* (footnote omitted).

### D. Request to Reconsider Co-conspirator Statements

Defendants respectfully ask the Court to reconsider the admissibility of co-conspirator statements, otherwise admissible pursuant to Federal Rule of Evidence 801(d)(2)(E), under First Amendment of the United States Constitution and pursuant to the rule of *strictissimi juris.*

When an defendant is charged as a member of a conspiracy, Rule 801(d)(2)(E) allows the admission of co-conspirator statements and acts as evidence against the defendant where: (1) the conspiracy alleged was in existence at the time the statement was made; (2) that the person who made the statement (the declarant) and the defendant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy. FRE 801(d)(2)(E). This rule, allowing the imputation of guilt via the statements and acts of third-parties, is generally applied to individuals of a group defined solely by a criminal purpose. But when a conspiracy charge stems from an individual's involvement in a group having both legal and illegal purposes, and which engages in both legal and illegal means of achieving those purposes, the applicability of Rule 801(d)(2)(E) requires further analysis under the First Amendment.

The United States Supreme Court has applied the rule of *strictissimi juris* when reviewing convictions under the anti-Communist Smith Act of individuals based on their membership in an organization advocating for the violent overthrow of the government.

Page 7 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS

Finding that the First Amendment protections applied to defendants prosecuted for membership in an organization having both lawful and unlawful purposes, the Court determined that the defendant's intent "must be judged *Strictissimi juris,* for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share."  *Noto v. United States,* 367 U.S. 290, 299 (1961); *see also Scales v. United States*, 367 U.S. 203 (1961).

The Supreme Court's reasoning also applies in certain conspiracy cases.  For example, in *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969), the First Circuit reviewed the conspiracy convictions of three anti-war activist defendants for counseling and aiding others to avoid the draft.  The First Circuit recognized that the crime of conspiracy implicates an individual's First Amendment rights to freedom of association and speech when it involves "a bifarious undertaking, involving both legal and illegal conduct," and that when such rights are implicated, it is improper to apply "the panoply of rules applicable to a conspiracy having purely illegal purposes * * *," as "[t]he metastatic rules of ordinary conspiracy are at direct variance with the principle of *strictissimi juris*." *Id.* at 172-74.  To address these constitutional concerns, the First Circuit held:

> "When the alleged agreement is both bifarious and political within the shadow of the First Amendment, we hold that an individual's specific intent to adhere to the illegal portions may be shown in one of three ways: by the individual defendant's prior or subsequent unambiguous statements; by the individual defendant's subsequent commission of the very illegal act contemplated by the agreement; or by the individual defendant's subsequent legal act if that act is 'clearly undertaken for the specific purpose of rendering effective the later illegal activity which is advocated.'"

*Id.* at 173 (citing *Scales v. United States*, 367 U.S. 203, 234 (1961).

**Page 8 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

Applying this standard, the First Circuit specifically noted the error of allowing the government to introduce co-conspirator statements as evidence of a defendant's specific intent because the "specific intent of one defendant in a case such as this is not ascertained by reference to the conduct or statements of another even though he has knowledge thereof." *Id*.

When the criminal activities of a group implicate the rights protected by the First Amendment, a higher level of scrutiny and proof should be applied, and the guilt of an individual conspirator should not rest on the circumstantial and attenuated evidence permitted under Rule 801(d)(2)(E). Otherwise, the crime of conspiracy becomes a vehicle by which the government can pursue all members of an organization or movement shown to have some illegal aim or be engaged in illegal means without clear proof that a particular member specifically intended to pursue that illegal aim or engage in illegal activity.

For example, in *United States v. Dellinger* 472 F.2d 340 (7th Cir. 1972), the Seventh Circuit found that the First Amendment was implicated in a case involving protestors convicted of violating the Anti-riot Act, noting:

> A realistic approach compels application of a first amendment test to a statute which punishes activity leading up to and furthering a riot, for at least two reasons. One is that rioting, in history and by nature, almost invariably occurs as an expression of political, social, or economic reactions, if not ideas. The rioting assemblage is usually protesting the policies of a government, an employer, or some other institution, or the social fabric in general, as was probably the case in the riots of 1967 and 1968 which are the backdrop for this legislation. A second reason is that a riot may well erupt out of an originally peaceful demonstration which many participants intended to maintain as such. Each participant is entitled to a careful distinction between responsibility for the lawful and constitutionally protected demonstration and responsibility for the activity for which the legislative body validly prescribes a penalty.
>
> Id. at 359.

The underlying assemblage here, protesting the policies of the federal government, necessarily implicates the protections of the First Amendment. As such, the Court is

**Page 9 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

required to make sure that the application of the conspiracy statute and its attendant rules do not infringe upon the defendants' rights of speech and assembly.

Defendant therefore request that the Court reconsider the admissibility of co-conspirator statements under the First Amendment.

*Experts.* Should the government offer expert testimony under Rule 702, the court should apply *strictissimi juris* to ensure that any expert does not remotely imply that an individual defendant is a part of a group, encourage the jury to find the defendants guilty as a group, or otherwise misuse their status as an expert to conflate individual defendants.

### E. Rule 29 Motions

"*Strictissimi* is, at its base, a sufficiency-of-the-evidence rule." Morrison, *Strictissimi Juris* at 263. The Ninth Circuit in *Hellman* articulated "the negate-all-alternatives, "clear proof," and direct evidence" approaches. *Id*. In applying the doctrine while determining the sufficiency of the evidence, the Eighth Circuit has explained that "[b]ecause the parties contemplated aims protected by the First Amendment, it is this Court's duty to carefully examine the specific intent of each party so that the illegal aims of one or several defendants are not mistakenly imputed to an innocent party." *United States v. Casper*, 541 F.2d 1275, 1280 (8th Cir. 1976). The Seventh Circuit described the application of *strictissimi juris* as

> necessary to avoid punishing one who participates in such an undertaking and is in sympathy with its legitimate aims, but does not intend to accomplish them by unlawful means. *Specially meticulous inquiry into the sufficiency of proof is justified and required* because of the real possibility in considering group activity, characteristic of political or social movements, of an unfair imputation of the intent or acts of some participants to all others.

**Page 10 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

*United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972) (emphasis added). "*[S]trictissimi juris* affects the sufficiency of the evidence to convict. It imposes a duty on the Court, in the case of defendants accused of membership in an organization with both lawful and unlawful aims, to consider evidence against each defendant 'according to the strictest law' so as to avoid conviction of members who used the organization for legitimate purposes." *United States v. Stone*, 848 F. Supp. 2d 719, 724 (E.D. Mich. 2012) (quoting *N.A.A.C.P. v. Claiborne Hardware,* 458 U.S. 886, 920, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)). The doctrine's application to sufficiency of the evidence has also been described as "requir[ing] a court to determine if there is sufficient direct or circumstantial evidence of the defendant's own advocacy of and participation in the illegal goals of the conspiracy and the court may not impute the illegal intent of alleged co-conspirators to the actions of the defendant." *United States v. Markiewicz,* 978 F.2d 786, 813 (2d Cir. 1992) (internal citations and alterations omitted).

### F. Jury Instructions

"The *strictissimi juris* doctrine emphasizes the need for care in analyzing the evidence against a particular defendant in a case of this type, both by the jury in its fact-finding process and by the court in determining whether the evidence is capable of convincing beyond a reasonable doubt." *United States v. Dellinger*, 472 F.2d 340, 393 (7th Cir. 1972). The jury instructions must tell the jury that evidence of First Amendment speech requires a heightened level of scrutiny, and they must also emphasize that they cannot assign guilt to any individual based on the actions of the group or other group members.

**Page 11 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

As applied to the conspiracy charge in Count One, *strictissimi juris* requires a heightened standard for the *mens rea* element to safeguard against an individual being convicted based on their association with the group. The Supreme Court has held that the government's evidence of a defendant's "specific intent" should be judged strictly – or *strictissimi juris*. *Noto v. United States*, 367 U.S. 290, 299 (1961)

> Criminal intent * * * must be judged *strictissimi juris*, for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share.

*Noto* at 299-300,

In *Scales v. United States*, 367 U.S. 203 (1961) the Court stated that "protection for the innocent could be adequately accomplished by requiring that the defendants' specific illegal intent be proved to the degree demanded in *Noto v. United States*." Id. at 234. In *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982), the Supreme Court repeated this rule and held that it applied to civil liability also. "For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims."). *Id.* at 920. "The government has the burden of establishing a knowing affiliation with an organization possessing unlawful aims and goals, and a specific intent to further those illegal aims." *Healy v. James*, 408 U.S. 169, 185-86 (1972).

With specific reference to the factor of intent, it is said in *Scales,* at page 229, that there must be 'clear proof.' Citing to *Scales*, in *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969), the First Circuit developed a test for determining a defendant's specific intent.

**Page 12 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

> When the alleged agreement is both bifarious and political within the shadow of the First Amendment, we hold that an individual's specific intent to adhere to the illegal portions may be shown in one of three ways: by the individual defendant's prior or subsequent unambiguous statements; by the individual defendant's subsequent commission of the very illegal act contemplated by the agreement; or by the individual defendant's subsequent legal act if that act is "clearly undertaken for the specific purpose of rendering effective the later illegal activity which is advocated." *Scales v. United States*, 367 U.S. at 234.
>
> *United States v. Spock*, 416 F.2d 165, 172-73 (1st Cir. 1969)

In this case, the Court's jury instructions should require a heightened level and standard of proof to make sure the jury is making its determination based on credible, direct evidence of a defendant's specific intent to join in the illegal objective of the alleged conspiracy. The Spock test does this.

In addition to a higher, stricter *mens rea* standard, *strictissimi juris* requires a similarly heightened standard for the jury's findings. The First Amendment protection of "core political speech" is "at its zenith." *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988) (describing "). To provide this protection, *Noto* informs us that the evidence of an individual's participation in a conspiracy that involves a significant First Amendment component must be clear. *Noto v. United States*, 367 U.S. 290 (1961) (Requiring "clear proof that a defendant 'specifically intend(s) to accomplish (the aims of the organization) by resort to violence.'" Id. at 299.)

In general, "instructions should restate the strictissimi-informed evidentiary rulings made before and during trial, inform the jury that it must consider the evidence under a heightened level of scrutiny, remind them that they cannot impute guilt from the group to the individual, and remind them that they play a role not only in determining guilt, but also in protecting defendants' First Amendment rights. Morrison, *Strictissimi Juris* at 280.

**Page 13 – DEFENDANTS' MEMORANDUM RE STRICTISSIMI JURIS**

## III.     Conclusion

As recognized by the Supreme Court, multiple circuit courts and trial courts, *strictissimi juris* plays an important role in conspiracy trials that implicate the First Amendment.  The doctrine works to protect the rights of individual defendants to free speech, to free association, and to being judged based on their actions and intent alone.  For these reasons, it must be considered in the case at bar, which so clearly implicates the doctrine.

Dated this 29th day of August 2016.

                                *Thomas K. Coan*
                                Thomas K. Coan, OSB 89173
                                Attorney for Defendant Santilli